Good morning, Your Honors. May it please the Court, Judith Seeds Miller for the petitioner. Your Honors, the only issue in this case, and I gathered this morning in all the immigration cases, is credibility. Based on the adverse credibility finding, all forms of relief in this case were denied. Asylum, withholding, and protection under the Convention Against Torture. And that can be found in the IJ's decision at pages 40 to 41 of the record. I believe that an adjudicator applying the law of the Ninth Circuit and not injecting his own conjecture and speculation about how one should react and how one's friends should behave, that is a reasonable fact finder, would be compelled to conclude based on the actual record and not the judge's misinterpretation in his oral decision of the record. I'm going to start with the problems posed by your client's statements at the airport. At the airport, Your Honor? Yeah. I mean, those – the statements he makes at the airport are completely inconsistent with the claims he's making now, right? Well, Your Honor, I wouldn't say that they are inconsistent. I would say that he didn't reveal his past. I think that it's very important to keep in mind that we're talking about a 17-year-old who has just traveled halfway around the world by himself on a ticket that he was given the night before and had only six – But hang on. But he's 17 years old. I grant you that. But according to his account now, he was fleeing persecution. The whole reason he was coming to the United States was to get away from this persecution he feared he would suffer. So he arrives at the airport and, I mean, he's actually asked, are you afraid of going back to Armenia? And he says that he's not, right? And he's asked, why are you – why did you come? And he says, I came here to try to find a job and for better opportunities. And it doesn't seem too much to say – too much of a burden to put on a 17-year-old to give honest answers to those questions, does it? Your Honor, I do think it is too much of a burden, assuming arguendo, that what he says happened to him happened to him. In May of 2001, now five months later we're in November of 2001, he's a kid. He's 17 years old. If he was beaten twice by government officials, police officers, and now he's fleeing that, and now he's just been taken aside because they're questioning him about using fraudulent documents or actual documents but not his, coming into the United States, I think it is very credible what he said in his testimony in court. I was afraid to tell them. I was afraid that they would treat me like a criminal. And then he wouldn't get in. And that would be a worse result, going back to what he was fleeing. It's not uncommon for people to not be forthright to the customs and border agents who are wearing those nice uniforms, and it's people in uniforms who had just beaten him. The immigration judge listened to that. We obviously can't. And made a determination that your client was incredible. So, I mean, you started out by saying, well, the immigration judge just relied on speculation. You're not allowed to do that. This doesn't strike me as, there's no speculation. Well, this is just an assessment, as you said, of is this person telling me the truth. Your Honor, there's a long history in the Ninth Circuit of not putting too much stock in what somebody says at the border. More specifically, though, it's where someone just doesn't include a detail when they're questioned at the airport. But these are, I mean, he's responding to direct questions and giving answers that are inconsistent now with what he's stating in his application. Yes, Your Honor. And if someone who has just been beaten by police officers and now has been taken aside, and it seems like arrested, because you're in a separate room, to say, yes, I was arrested, and this is what happened to me, it's not unreasonable for him to think, if I say that, I'm going to be deemed to be a criminal, because why had they arrested me in Armenia. But I think that the most significant problem in the adverse credibility determination is with regard to the judge's finding that he was inconsistent regarding the number of times that he was interrogated. Now, in direct testimony, which was pages, that portion of it was pages 94 to 98 of the record, he very clearly testified that he was only interrogated one time. Now, his statement that was attached to the asylum application is at page 250 of the record. He states, they took me to the station, questioned me for about an hour, they wanted to know what organization I belonged to, who the organizers were, and who were the members. They beat me severely. There's no mention of how many times he was interrogated, how many times he was beaten. On direct, as I said, he stated he was interrogated once. After that, on cross-examination, counsel for the government very doggedly tried to create the illusion of an inconsistency. And starting at page 107, where government counsel stated, and in fact, sir, you told us you were questioned twice and taken back and forth to different rooms. At that point, counsel ---- I don't know why he didn't get medical treatment for what sounded like were severe injuries following these beatings. He seemed to come up with a ---- He said he had no money. He stated that neither his father or stepmother were employed. He had not been able to find work. They lived off the fruits and vegetables that they grew and the chickens that they raised. His friends were of the same economic level and had no money to give him to go to a clinic. The judge stated, wasn't there a clinic you could go to? He said, yes, but you have to pay. Well, it's not that he then says, oh, but my friends came up with the cash to get me this relatively expensive ticket, I assume. Actually, Your Honor, he states that he doesn't know how they got it and whether they had to pay. And ---- They didn't get the ticket for free. Well, we don't actually know that, Your Honor, because given the amount and the record is replete with documentation even from our own government in the country conditions report of the corruption in Armenia, it's quite possible that they were, you know, related to smugglers or people who dealt with false documents. The fact is we don't know, but to say and the judge ---- What about the content, his inability to recall the content of the flyers? That one I found difficult to understand. If he was passionate enough about the issue, to be handing out the flyers, to engage with the police, to be beaten over it, to flee to the United States, all because of his protest activities, one would think that he could remember what the flyers said. I found it impossible to ---- not impossible, but difficult to understand how he could not remember what the flyers said. Your Honor, he was handing out the flyers in May of 2001 at the age of 17. And he was questioned about the content of the flyers in July 2008 at the age of 24. He testified that the flyers contained information about the extreme hazing and mistreatment of soldiers in the Armenian military, in particular those who came from poorer families. And the fact that he couldn't remember the exact wording seven years, which was almost a third of his life later, I think is actually quite credible and would have pushed the envelope to think that he would be able to remember the wording of all of these. I'm going to reserve my last. Can I ask one more? I'd like to hear you answer. I'm curious about one thing. The I.J. determined that the photo on the license was him, and he said it wasn't. Is that right? It was a reentry permit, and he says this really looks like you to me. Yeah. So my question is, aren't we required to accept the I.J.'s determination? There was no other evidence other than the photo itself, and we have, I think, maybe a photocopy of it or something. I'm trying to understand what we're supposed to do with that. The I.J. says it looks like you to me, and I think you're lying that it's not you. What are we to do with that? Well, Your Honor, I don't think that the judge is a forensic, an expert in forensic analysis and able to determine whether this is a photograph of him or not. And we don't have a photograph of the actual Hagoop Shahirian in the record. That document was produced only at the merits hearing. The government, which had had it in its possession all the years that the case had been pending, had never sent it out, and government counsel even stated on the record that she had not even looked up the alien number that was on the reentry document. But, you know, we accept. I'm not necessarily disagreeing with you, but nobody raised these issues before the I.J., and we accept eyewitness testimony in court all the time, and juries find people guilty because of that, based on less reliable information than what was before the I.J. here. The I.J. had here was a picture, and he had the applicant, and he could look at the picture and look at the individual and say, I think that's you. Your Honor, there would have been no reason for him to lie about the picture not being him. There would have been absolutely no reason. Should someone have objected and said, you know, judge, you shouldn't make that determination, there should be some forensic evaluation? Possibly, Your Honor. I think given the moment, sometimes, and I was trial counsel, so if there would have been anyone, it would have been me. One has to make a judgment about crossing the line in how one objects to the adjudicator. Okay. We'll give you two minutes for rebuttal. Thank you. We'll hear from the government now. Your Honors, under pre-real ID act case law, there is no criminal liability determination so long as one of the inconsistencies identified by the agency is supported by the record and goes to the heart of the persecution claim. Here you have that inconsistency in the airport interview given by the petitioner in this case. That interview directly contradicts his claim that he was arrested by the police in Armenia. He was directly asked in the airport interview, have you been arrested? He said no. Moreover, he was asked by the immigration official, what was your purpose in traveling to the United States? And the petitioner made no mention of the fact that he had experienced mistreatment of any kind in Armenia. He said that he came here because it had always been his dream to travel to the United States, and there were better economic opportunities for him here than in Armenia. That in and of itself provides substantial evidence to support the adverse credibility determination. Petitioner argues that the airport statement should not be viewed as valuable impeachment evidence in this case, but I think it's significant that in his testimony before the immigration judge, the petitioner admitted that he was aided by an interpreter. He did not indicate that there were any problems understanding the interpreter. The statement itself, which appears on pages 170 through 73 of the record, reflects that the petitioner had the opportunity to review every page of the statement for accuracy. He initialed each page and he signed it at the end. And as the immigration judge noted, it's significant that the petitioner otherwise was very truthful with the airport officials, even as to his use of fraudulent documents to attempt to enter the United States. He was asked twice during the merits hearing why he didn't tell the airport officials that he had experienced mistreatment in Armenia, and on both occasions he said, I was afraid, I was nervous. As Your Honor noted, the agency was not required to accept that explanation. It was the immigration judge who had the opportunity to observe the petitioner's demeanor when he provided that explanation, and the immigration judge wasn't compelled to accept it. In addition to the airport statement, there was other evidence of the petitioner's lack of credibility in this case, in particular, his implausible explanation as to how he was able to program his testimony and procure documents to travel to the United States. He testified that a couple of days after his arrest and detention, he went to see his friends. At the time, he was very badly beaten, his eyes were swollen shut, he testified that he had bruises, he could barely walk. His friends do not take the step of trying to procure medical treatment for him, but he testifies that over the course of about six months, these same friends were able to arrange for fraudulent entry documents to the United States, a passport, and a flight itinerary to travel to the United States. He first testified as to the process of procuring those documents. He first testified that those documents were not free, and that there was an expectation that he would reimburse his friends for the cost after he arrived in the United States. And that's at page 118 of the record. He then testified in response to questioning by the immigration judge, and this begins on page 142 of the record, that he didn't know whether anybody had to pay for his plane ticket to the United States. It may have been a gift. He also testified that he had no idea whether his friends had to pay for his United States entry document. That conflicts with his previous testimony that these documents weren't free, and that there was an expectation of reimbursement. Well, who does he reimburse for the documents, and how much money is he supposed to provide? As the immigration judge noted, this is implausible, that he can't provide answers to these questions. So there, again, you have further evidence supporting the adverse credibility determination. And finally, Your Honors, as to the flyers that the Petitioner testified prompted his arrest and detention, he did testify on page 92 of the record that he and his friends actually created the flyers themselves. So that does make it reasonable for the agency to expect that he would be able to provide some further detail about what the flyers actually said. Petitioner noted that the immigration believed there may have been an inconsistency between the written statement and his testimony as to the number of times that he was interrogated. I do agree with Your Honor that there is no direct inconsistency there. I think the significance of the written statement is simply that it does not provide enough detail to aid the Petitioner's argument that there's evidence in this case compelling a finding of credibility. Do you have any further questions on that? Okay. Let me ask you, I think we've heard your argument on adverse credibility. Let me ask you this about the Catt claim, because if I remember right, the agency said that the Petitioner had waived, am I remembering that right? I hate to get these cases confused, but this is the case where the agency said he had waived that claim? The board made a finding that he had waived that claim. Right. And that just did not seem to me to be remotely true. And so what are we supposed to do about that? I think that this case entirely turns on the Petitioner's credibility. And if the court were to disagree with the government and find that the Petitioner Let's say we agree with you that the adverse credibility determination was supported by substantial evidence, but that's not the ground the agency gave for rejecting the Catt claim. Isn't it in the alternative? Isn't the rejection of the credibility finding, doesn't that end the inquiry? Your Honor, I believe that the rejection of the adverse credibility finding does end the inquiry, because the Petitioner never identified any basis for his Catt claim other than the events he describes concerning his arrest and detention in Armenia. But I think what Judge Watford's getting at is the BIA went on to say something about even if he wasn't credible, he waived this Catt claim by not raising it. Is that it? No. I mean, let me just be more specific. I think I wish the BIA had done that. What they said was we uphold the adverse credibility determination, therefore the asylum and withholding claims are rejected. As to the Catt claim, they gave no other explanation other than the Petitioner had supposedly waived that claim. And I don't think we are able to just affirm on an alternative ground, are we? Sure. You've got the decision in front of you. I do. Yes, Your Honor, I do. They don't give any other explanation other than this waiver notion. In addition, the Respondent does not assert any cogent arguments. Well, Your Honor, I disagree that a remand is appropriate because there is no other apparent basis for a Catt claim in the record. It all seems to completely turn on the Petitioner's credibility, which is lacking in this case. However, if the Court disagrees with the government on that issue, then the appropriate action would be a remand for further consideration of the Catt claim only. Okay. All right. Thank you, counsel. Appreciate your argument. We'll give you two minutes for a vote on that. Your Honor, I would like to address regarding the Catt claim. My reading of the decision of the BIA was that because Catt wasn't argued on appeal, that that caused it to be waived. However, the ‑‑ there was not an analysis of the asylum or the withholding argued on appeal. Also, there was no discussion of nexus past persecution, well-founded, any of the elements. And that's because with the only finding that the immigration judge made was adverse credibility. And with that, all three claims fail. So that's simply sort of a non sequitur of a finding, Your Honor, in my opinion. If the Catt claim was waived, so were the others. And if ‑‑ although the Ninth Circuit has found that even with an adverse credibility, you can get Catt, if the basis of the Catt is the facts that are found not to be credible, there's nothing there. Well, so are you asking us not to remand on the Catt claim? Let's say that we uphold the adverse credibility determination here. It does seem to be a huge waste of time to send it back to the agency saying that the waiver finding was wrong. But, I mean, are you saying that we shouldn't do that? Well, Your Honor, I would never waive the opportunity to continue fighting. But there was never an analysis. The immigration judge made no analysis of any of the claims. So there was nothing to take up. So that could not have been waived. Okay. So you would want to go back on the Catt claim? Absolutely. Okay. I was confused. I thought maybe you were saying, please don't send me back. This is a waste of time. Absolutely, Your Honor. I think one thing that has not been focused on, and while we agree that the statement and the testimony were not, and I think government has just stated not in disagreement regarding whether there was one interrogation or two interrogations, he very consistently testified throughout, even though he was confronted three times by the trial attorney saying, but didn't you just tell us there were two interrogations? And he said no. And yet in the judge's decision, and this was really the crux of his decision, he states, I believe there was an exchange that was rather insightful on the issue of credibility and whether he's actually making this up as we go along. It appears from the statement it's unclear whether there or not there were one or two interrogations. When the government inquired, assuming there were two interrogations, counsel objected. It doesn't appear that response counsel had ever spoken to a respondent or had gotten their story straight. So in his decision, he is finding that the petitioner had testified that there were two interrogations when, in fact, a review of the record discloses the opposite. And this was really what went to the heart of his feelings about the adverse credibility. Okay. Thank you. Thank you, counsel. The case just argued will stand submitted.
judges: Smith, Noonan, Watford